UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN DOE, et al., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:73-6971 |
| | ) | Judge Aleta A. Trauger |
| v. | ) | |
| | ) | |
| BEVERLY BRILEY, et al., | ) | |
| | ) | |
| Defendants, | ) | |

## MEMORANDUM

Pending before the court are several motions. The plaintiff has filed a Motion to Adopt Plaintiff Class' Proposed Revised Order (Docket No. 166), to which the defendant, the Metropolitan Government of Nashville & Davidson County ("Metro Nashville"), has filed a Response in opposition (Docket No. 175), and the plaintiff filed a Reply (Docket No. 186).[1] Metro Nashville has filed a Motion for Proposed Modification to 1973 Consent Decree (Docket No. 168), to which the plaintiff has filed a Response in opposition (Docket No. 180), and Metro Nashville filed a Reply (Docket No. 184). The plaintiff has filed a Motion to Add Named Plaintiff Jane Roe (Docket No. 189) ("Motion to Add Jane Roe"), to which Metro Nashville has filed a Response in opposition (Docket No. 194), and the plaintiff filed a Reply (Docket No. 199). Finally, Metro Nashville has filed a Motion for Reconsideration (Docket No. 192), which asks the court to reconsider its April 1, 2014 decision (Docket No. 191) to grant the plaintiff's

---

[1] As set forth herein, the defendants suspect that the attorney who re-opened this case on behalf of "John Doe" has been proceeding without an actual client. For the sake of simplicity, the court will nevertheless refer to filings made on behalf of John Doe and the plaintiff class as made by "the plaintiff."

1

motion to hold discovery in abeyance pending resolution of the Motion to Add Jane Roe (Docket No. 190).

## **BACKGROUND**

The procedural history of this case is both remarkable and tortured.[2] John Doe, whose identity remains under seal, initiated this class action lawsuit in 1973, seeking to change local policies concerning the consideration and dissemination of arrest records that did not involve a conviction. On behalf of the class, John Doe entered into two consent decrees with the defendants at the time: (1) a 1973 Consent Decree, which, in substance, obligated the defendants not to consider arrest records in hiring new employees; and (2) a 1974 Consent Decree, which related to the dissemination and publication of arrest records. Vanderbilt University Law School Professor James Franklin Blumstein served (among other attorneys) as counsel for John Doe and the plaintiff class in the original iteration of this lawsuit.

In 2006, Professor Blumstein, purporting to act on behalf of John Doe as a representative of the plaintiff class, reopened this lawsuit by filing a "Motion for Further Relief to Assure Compliance" with the 1974 Consent Decree. As this court has noted in previous opinions, the case initially focused primarily, if not exclusively, on the 1974 Consent Decree. The court granted Metro Nashville's Motion to Vacate the 1974 Consent Decree, finding, in substance, that the constitutional premise on which that decree rested had been abrogated by the Supreme Court. (Docket No. 61.) The Sixth Circuit affirmed. (Docket No. 82.)

---

[2] The procedural history of the case is set forth at length in previous opinions by this court and by the Sixth Circuit. *See, e.g.*, *Doe v. Briley*, 511 F. Supp. 2d 904 (M.D. Tenn. 2007); *Doe v. Briley*, 562 F.3d 777 (6th Cir. 2009); *Doe v. Briley*, 2011 WL 129396 (M.D. Tenn. Jan. 14, 2011).

2

Following the Sixth Circuit decision, the parties began to litigate issues related to the 1973 Consent Decree, which to that point had only been addressed tangentially. The plaintiff filed a Motion for Contempt on the grounds that Metro Nashville had not complied with the 1973 Consent Decree. (Docket No. 88.) Metro Nashville responded by filing a Motion to Vacate the 1973 Consent Decree. (Docket No. 90.) On May 14, 2011, the court: (1) found that the scope of the 1973 Consent Decree should be modified in light of changed societal circumstances (granting in part and denying in part the Motion to Vacate); (2) ordered the parties to negotiate in an attempt to agree to reasonable modifications of the 1973 Consent Decree; (3) granted the Motion for Contempt; and (4) held discovery concerning contempt in abeyance pending the results of the parties' negotiations. (Docket Nos. 125-26.) For over two years, the court oversaw negotiations between the parties, including numerous status conferences with, and written reports to, the court. (*See* Docket Nos. 133-165.)

After the negotiations reached an impasse, the court ordered the parties to submit competing motions to modify the 1973 Consent Decree (Docket No. 165), which the parties filed (Docket Nos. 166 and 168.) Although the original 1973 Consent Decree was one paragraph, the plaintiff filed a 43-page proposed modification (Docket No. 167), which would impose numerous requirements specific to particular Metro Nashville departments, create multiple special bureaucratic mechanisms to enforce these requirements department-by-department, and impose numerous procedural requirements on the departments. In support of these proposed changes, counsel for the plaintiff makes numerous unsupported factual statements concerning (1) the need for these changes to protect the class's interests, and (2) their feasibility. (Docket No. 166.) Plaintiff's counsel also references the content of settlement discussions with Metro Nashville as reflecting the parties' purported "agreements" on various terms contained within

plaintiff's sprawling proposed modifications. (Docket No. 166.) For its part, Metro Nashville's proposed modification would be four paragraphs long and would be considerably simpler and narrower than the version proposed by the plaintiff.

On December 16, 2013, the same date that the parties filed their proposed modifications, Metro Nashville filed a Motion for Discovery of Class Representative, which sought discovery into (1) whether there is an active class member with standing to pursue a contempt action against Metro Nashville, and (2) what modifications to the existing decree would address the concerns of individual class members. (Docket No. 169.) Metro Nashville argued that the court should not modify the 1973 Consent Decree without permitting this discovery. The plaintiff responded by filing a "Motion to Quash" (Docket No. 178) and a Response in Opposition (Docket No. 179), which collectively argued that John Doe's identity could not validly be disclosed to Metro Nashville and that standing had already been adjudicated in 1973 as part of the original iteration of this lawsuit.

With respect to the pending proposed modifications to the 1973 Consent Decree, both of the parties have filed submissions referencing the lack of a developed factual record. Metro Nashville asserts that the plaintiff has not substantiated why "the protections of the 1973 Decree will be eroded or evaded unless an exhaustively detailed, 43-page revised decree is adopted." Metro Nashville notes that "there has been no discovery and no record-building in this case" to substantiate the plaintiff's proposed modifications, and Metro Nashville urged the court to "be mindful that Plaintiffs' legal position and arguments are not based on any evidence in the record, as no factual record has been developed as of yet." (Docket No. 175 at p. 1 n.1.) For its part, the plaintiff contends that Metro Nashville has not substantiated *its* proposed modifications, and the plaintiff contends that it would be reversible error for the court to make any modifications to the

4

1973 Consent Decree without holding a complete hearing and making factual findings. The plaintiff also argues that Metro Nashville has the burden to substantiate modifications but has not met that burden. (Docket No. 186 at p. 7-8.)

On February 26, 2014, the court granted Metro Nashville's Motion for Discovery of Class Representative and denied the plaintiff's Motion to Quash. (Docket No. 187.) The court observed that, in the context of extended discussions with the parties, both the court and counsel for the defendants had begun to suspect that plaintiff's counsel was "negotiating on the basis of his own views and was not consulting with the class representative, John Doe." The court found that "the defendants and the court are entitled to know whether there is a still a class representative and whether that person is adequately representing the class before this court in ongoing proceedings." (Docket No. 187.) The court ordered the parties to complete this discovery within 60 days. (*Id.*)

Approximately thirty days later, the plaintiff (1) moved to "add" a "Jane Roe" as a plaintiff (Docket No. 189), with a supporting affidavit from Jane Roe (*id.*, Ex. A), and (2) moved to hold discovery in abeyance pending the court's ruling on the Motion to Add Jane Roe as a class representative (Docket No. 190). Before receiving a response from Metro Nashville, the court granted the motion to defer the previously ordered discovery. (Docket No. 191.)

Metro Nashville has filed a Motion for Reconsideration (Docket No. 192), which urges the court to reconsider its decision to defer discovery. In support of the motion, Metro Nashville argues that the discovery is important to determine whether John Doe exists, whether he has been participating in the litigation up to this point, and whether he has been an adequate class representative during the relevant time frame. (Docket No. 193.) Metro Nashville argues that the matter is relevant to (1) whether "John Doe" can recover attorney's fees as a "prevailing

5

party," (2) whether he had standing to pursue the Motion for Contempt, and (3) whether there is a serious issue with the "integrity of these proceedings as a whole." (*Id.* at p. 2.)

## ANALYSIS

### I. Issues Relating to Class Representatives

As to the motion to add Jane Roe, her affidavit establishes that she was a bus driver for the Metro Nashville Public School System ("MNPS"), that she was arrested on September 17, 2003, and that she was terminated on March 30, 2004 "for conduct unbecoming." On March 10, 2005, the criminal charge against her was dismissed. She claims that, while her charges were pending, "I unsuccessfully requested that I be re-employed by MNPS should my employment with MNPS be terminated and the charges against me be subsequently dismissed or if I were not convicted of the charges against me." She avers that "those requests were ignored or denied." She avers that, if the 1973 Consent Decree is modified in a way "so as to retain and protect the core protections for me and other members of the plaintiff class, I will apply for a position as a bus driver or with Metro or for any other position with Metro or MNPS for which I am qualified and that provides for comparable or superior benefits to those I currently enjoy" as a private bus driver.

Metro Nashville offers a more complete account of events, supported by the Declaration of Dr. Elizabeth Junell Keel, the Assistant Superintendent of Human Resources for MNPS. She avers that, in 2002, MNPS received an email complaint that Jane Roe had assisted her husband in selling marijuana out of their home, that Jane Roe admitted to her supervisor that she knew about the presence of drugs in her house, and that her supervisor told her to correct the situation immediately. In 2003, Jane Roe and her husband were both arrested on drug charges. According to Dr. Keel, police found large and small bags of marijuana "throughout" their house,

6

including items "out in the open" beside Jane Roe's makeup bag and toiletries. According to Dr. Keel, Metro Nashville determined that the continued presence of marijuana in her home despite a specific warning from her supervisor a year earlier constituted conduct unbecoming a MNPS employee, particularly as to a bus driver in a "safety sensitive position." Jane Roe received a departmental hearing and an appeal hearing. At some point in this process she was terminated.

Metro Nashville argues that Jane Roe is not an adequate class representative because she is not a member of the class and because her claims or defenses are not typical of those in the class. In particular, Metro Nashville argues that Jane Roe was terminated because of her actual conduct, not because of her arrest. Metro Nashville also argues that there is no record of her arrest in the first place. Metro Nashville also argues that, if the court is not inclined to deny the motion to add Jane Roe outright, it should at least permit discovery or hold a hearing concerning her adequacy as a class representative and the "involvement or lack thereof of John Doe in the proceedings to date."

In response, the plaintiff argues that Jane Roe need not be able to prevail on her individual claims to serve as an adequate class representative. *See Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976); *Sosna v. Iowa*, 419 U.S. 393, 399 (1975). The plaintiff also argues that Jane Roe is a proper plaintiff to "see through the sanctions for contempt that this Court has found on behalf of the plaintiff class." Finally, counsel for the plaintiff states that, if a named plaintiff becomes an inadequate class representative, the appropriate remedy is for the court to allow for the substitution of class representatives with live claims. *See Hadix v. Johnson*, 182 F.3d 400, 406 n.3 (6th Cir. 1999).

The court finds that discovery concerning the adequacy of a Jane Roe as a plaintiff is warranted. Although the plaintiff argues with some force that discovery of Jane Roe is

7

irrelevant, the peculiar posture of this case justifies a complete record concerning her standing as an appropriate plaintiff. She is seeking to be added as a party plaintiff to enforce (or at least force the modification of) Metro Nashville policies that potentially affect all Metro Nashville job applicants. The parties and the court will benefit from a better understanding as to how she purports to be an appropriate representative to procure these changes on behalf of unnamed members of the class. At the upcoming status conference, the court will also consider whether, if Jane Roe is not an appropriate plaintiff, Metro Nashville must provide information that would assist in locating a proper representative plaintiff.

With respect to John Doe, the court has reconsidered its position. Discovery of John Doe is necessary for numerous reasons, including whether plaintiff's counsel initiated this lawsuit and engaged in settlement negotiations without a client, whether Metro Nashville faces the legitimate prospect of paying attorney's fees prior to the "addition" of Jane Roe as a party, and whether the court might be required to vacate the Motion for Contempt and the court's earlier order granting it (if indeed plaintiff's counsel filed it without a client or without otherwise receiving client approval). Although plaintiff's counsel suggests that substituting Jane Roe (or some other appropriate plaintiff) would essentially paper over any issues concerning the past and future trajectory of this litigation, the court is not convinced. It is true that a class representative's individual claims may become moot *during* litigation or prior to renewal of a case involving a consent decree, and that, in those situations, courts have fashioned specialized doctrines to permit the class claims to proceed under the original representative's name and with that representative's consent and involvement, at least until an adequate class representative can be secured. But that is not the situation here, as there are serious questions as to whether John Doe

8

is even aware of the reactivation of this case, let alone been a participant in the proceedings since 2006.

In *Hadix*, five Michigan inmates brought a class action alleging that, relative to five correctional facilities, Michigan correctional officials had imposed unconstitutional restrictions on prison inmates' access to the courts. 182 F.3d at 401-02. After ruling on appeal that the district court would need to make additional factual determinations on remand concerning the merits of the claims, the Sixth Circuit also noted that, if the district court determined on remand that the named plaintiffs were no longer incarcerated, their claims were moot. *Id.* at 406. n.3. The Sixth Circuit noted that, if that proved to be the case, "[m]ootness of the original named plaintiffs' claims, however, does not moot the class action, provided a live controversy remains between the defendants and the plaintiff classes." *Id.* Accordingly, "[t]o satisfy concerns under Rule 23, the appropriate solution would be for the district to allow for the substitution of class representatives with live claims . . . ." *Id.*

Similarly, in *Sosna v. Iowa*, the plaintiff (Sosna) challenged, on behalf of a class, the constitutionality of an Iowa statute that required couples to reside in Iowa for one year before filing a divorce petition. 419 U.S. 393, 395 (1975). By the time Sosna's case reached the Supreme Court, Sosna had lived in Iowa for over a year, thereby mooting her individual claim. *Id.* at 399. The Supreme Court found that, "[w]hen the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by [Sosna]." *Id.* The Court observed that, although the state officials would not be able to enforce the durational residency requirement against Sosna again, it would continue to enforce it against others "and yet, because of the passage of time, no single challenger will remain subject to its restrictions for the period necessary to see such a

lawsuit to its conclusion." *Id*. at 401. The Court concluded that, although the case "is no longer alive . . . as to Sonsa, it remains very much alive for the class of persons she has been certified to represent." *Id*. Because "the issue sought to be litigated escapes full appellate review at the behest of any single challenger," it "does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs." *Id.* Therefore, the court found that Sosna could continue to represent the class's interests on appeal. *Id.* at 402. However, the Court noted that, "[i]n cases in which the alleged harm would not dissipate during the normal time required for resolution of the controversy, the general principles of Art. III jurisdiction require that the plaintiff's personal stake in the litigation continue throughout the entirety of the litigation." *Id.*

*Sosna* sheds little light on the issues presented here. *Sosna* fundamentally concerned whether federal constitutional challenges to short durational residency requirements would always "remain unredressed for want of a spokesman who could retain a personal adversary position throughout the course of the litigation." *Id.* at 402 n.9. As the Court explicitly acknowledged, its opinion was designed to "shift the focus of examination from justiciability to the ability of the named representative to 'fairly and adequately' protect the interests of the class.'" *Id*. at 403 (citing Fed. R. Civ. P. 23(c)(2)).

The plaintiff also cites to *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608 (6th Cir. 2013), which actually cuts against their position that discovery of John Doe is not warranted. There, in 1979, two named plaintiffs filed a class action, five named plaintiffs were added as representatives in 1983 (and the plaintiffs' counsel notified the court that one of the original plaintiffs had died), two named plaintiffs intervened in 1984, the court certified a (sub)class in 1985 related to Tennessee Medicaid recipients, and the parties entered into consent decrees (and

revisions thereof) in 1986 and 1992. *Id.* at 613. After the state modified its Medicaid program to a managed care program called TennCare, five class members filed motions to modify the 1992 consent decree, including four new unnamed minors, who simply appeared on the filing under their initials and never formally moved to intervene. *Id.* The state did not question the appearance of these minors during litigation over the next several years. *Id.* at 613-614. In 1996, the court approved modifications to the consent decree in an order that included the minors as a party (in addition to the identifiable plaintiffs). *Id.* at 614. In 1998, plaintiffs' counsel notified the court that two of the named representatives had died, leaving six identified named parties and the initialed minors. *Id.* The parties revised the consent decrees in 1999 and 2000, and the court entered a final modified consent decree in 2003. *Id.* Thereafter, the state restructured TennCare and sought modification of the 2003 consent decree by formal motion in June 2005. *Id.* at 614-15. In November 2005, the district court granted the motion in part and denied it in part. *Id.* at 615. The parties continued to litigate the case, including a 2006 motion by counsel for the plaintiffs for attorney's fees. *Id.* In the interim, "none of the parties noticed that, in the meantime, several of the named class representatives had either died or disenrolled from TennCare." *Id.* at 615 n.1. The State opposed the fee request as excessive but again made no challenge that there was not a proper plaintiff before the court. *Id.* at 615. The district court awarded fees to the plaintiffs, and the State appealed. *Id.* at 616.

On appeal, the Sixth Circuit Clerk's Office contacted the State to identify who the plaintiffs-appellees were in the case. *Id.* Through its own investigation, "the State realized that none of the six individuals previously 'appointed' by the court [*i.e.*, those other than the minors] as class representatives remained alive or enrolled in TennCare." *Id.* In fact, in addition to the three deaths that plaintiffs' counsel had reported to the court, the State discovered that two of the

other three named representatives had died and that the third plaintiff, Ms. Fitts, had moved to Alabama in June 2005.  *Id.*

The State asked the Sixth Circuit to remand their appeal because there was no proper party.  *Id.*  After the State obtained an indicative ruling under Rule 62.1 from the district court, the Sixth Circuit remanded the case to the district court.  *Id.* at 616-17.  On remand, the State sought to vacate the fee award, arguing that it had not "implicitly certified" the addition of C.J. as a plaintiff.  *Id.*  The district court allowed the plaintiffs to add class members.  *Id.* at 617 n.8.  The district court did not rule on the State's arguments concerning the unidentified minors and found that discovery concerning them was not warranted.  *Id.* at 617.  The State again appealed, arguing that the fee award was improper because Ms. Fitts, the lone remaining named plaintiff, had moved to Alabama in June 2005.  *Id.* at 618.

On renewed appeal, the Sixth Circuit observed that the defendants had never questioned the adequacy of the named plaintiffs until 2010, which was long after the district court had approved the 2005 revised decree and had entered the 2009 fee award.  *Id.*  Although the State argued that Ms. Fitts must have "withdrawn" from the class when she moved to Alabama in June 2005, the Sixth Circuit noted that "there is nothing in the record noting that Fitts had moved to Alabama" or was otherwise an inadequate class representative.  *Id.*  Based on *Sosna*, the Sixth Circuit found that "a class representative may still adequately represent the class, for purposes of Rule 23, even if the representative's personal claims have become moot, at least until such time that there is a determination that the representative is no longer adequate."  *Id.* at 619.  Because the State had never challenged Ms. Fitts' adequacy as a plaintiff, no court had passed on the question of whether Fitts was an adequate class representative when the district court approved the 2005 revised consent decree.  *Id.* at 619.  Presumably because the Sixth Circuit determined

12

that Ms. Fitts' participation in the lawsuit was sufficient, the Sixth Circuit's opinion did not address the issue of the unidentified minors.

This case also differs from *Binta*. First and foremost, in *Binta*, the State knew the names of the named plaintiffs and, on its own, was able to discover that the named plaintiffs had either died or moved out of state. The State simply failed to realize this fact until the Sixth Circuit Clerk inquired about the issue years after the fact. Here, Metro Nashville does not know the actual name of "John Doe," so it cannot assess John Doe's continuing adequacy as a party, let alone whether John Doe is actually participating in this lawsuit, withdrew from the class at some point, or is deceased. Second, *Binta* does not indicate that it is appropriate for class counsel to litigate a case and attempt to settle a case without *any* representative plaintiff. *Binta* does not address this question: it does not appear that the Sixth Circuit or the district court inquired into whether the deceased parties were aware of the lawsuit and participated in it until they died, or whether Ms. Fitts had ceased participating in the lawsuit when she moved to Alabama. Instead, the Sixth Circuit, perhaps assuming Ms. Fitts' continued involvement in the litigation (which included discussions related to revisions of the 2003 version of the consent decree), focused on whether Ms. Fitts' interests continued to align with those of the remaining class members, even after she moved to Alabama – an issue (mootness) that the State could have, but did not, raise before the district court in 2005. Third, Metro Nashville here seeks to create precisely the record that the Sixth Circuit found was lacking in *Binta*. Furthermore, unlike in *Binta*, counsel for the plaintiff class here has continued to litigate the case, in the face of a direct challenge to the existence (let alone sufficiency) of the lone "John Doe" plaintiff, and continues to seek deferral of any inquiry into this issue, raising concerns that were not present in *Binta*.

More generally, there seems to be a meaningful distinction between, on the one hand, a case involving *mootness* of the class representatives' claims (such as in *Hadix*, *Sosna*, and *Binta*) and a case in which class counsel simply renewed a case and actively litigated it for years under the lone original class representative's name, allegedly without that individual's knowledge, consent, or meaningful involvement. Although *Hadix* indicates that courts should permit the substitution of an appropriate plaintiff, it does not hold that class counsel can simply litigate, negotiate, and resolve cases without a representative plaintiff. Similarly, *Binta* and *Sosna* hinged on the fact that at least one live class representative with otherwise moot claims continued to participate in the litigation through the point where defendants moved for modification of the operative consent decree. Those cases also involved an essentially unbroken chain of litigation, not the more than thirty-five year gap presented here. The issue in those cases was essentially whether there was some live remaining person whose interests aligned with those of the class and who was still participating in the litigation, such that the court could be confident that *the representative* could, in the best interests of the unnamed class members, bind other members of the class to whatever agreement *the representative* believed was appropriate.

Here, if it is the case that John Doe was not meaningfully participating in this lawsuit for several years, it might implicate a separate set of concerns that would require targeted briefing, regardless of the substitution or addition of a proper class representative going forward.[3] Accordingly, having considered the fully briefed Motion to Add Jane Roe, the court now finds

---

[3] If the Metro Nashville's suspicions are true, it is unclear to the court what the impact would be on any motions previously filed and ruled upon in the renewed iteration of this lawsuit as it relates to the 1973 Consent Decree. For example, if no plaintiff approved it, must the Motion for Contempt be stricken and the court's associated 2011 order (which granted it) be vacated? Are ethics rules implicated?

that a complete record regarding both "John Doe" and "Jane Roe" is necessary to the court's consideration of the case – both prospectively and retrospectively.

## II. Issues Concerning Modifications to the 1973 Consent Decree

With respect to the competing motions to modify the 1973 Consent Decree, the court cannot modify a consent decree without "a complete hearing and findings of facts" that demonstrate that "unforeseen conditions have created a hardship or that there are "other appropriate grounds for modification." *Heath v. DeCourcy*, 992 F.2d 630, 634 (6th Cir. 1993); *accord United States v. Wayne Cnty.*, 369 F.3d 508, 512 (6th Cir. 2004); *Gonzales v. Galvin*, 151 F.3d 526, 534-35 (6th Cir. 1998). The party seeking to modify the decree bears the burden of showing that modifications are warranted through factual submissions; the court's findings cannot be made on the basis of unverified statements, unauthenticated materials, or arguments of counsel. *See Heath*, 992 F.2d at 635.

This case presents a peculiar procedural posture: both parties seem to agree that modifications are warranted, and the court held previously that modifications to the 1973 Consent Decree are absolutely necessary. Nevertheless, prior to the court's recent order, neither party formally had filed a motion to modify the decree; in fact, Metro Nashville sought to *vacate* it and continues to urge the court to reconsider its order that declined to vacate it. For his part, the plaintiff acknowledges that modifications are warranted, and the plaintiff has urged the court to adopt complex and sweeping modifications in a 43-page proposed revision. Thus, even determining which party is the "movant" here is difficult, based on the manner in which this case has progressed.

At any rate, given that it would be reversible error for the court to modify the decree without a hearing and factual findings, the record before the court concerning the competing

15

motions to modify is factually insufficient. Metro Nashville did file two affidavits in support of its opposition to the plaintiff's proposed modifications, but those affidavits only support some of Metro Nashville's arguments. Over the past several years, Metro Nashville has also filed affidavits relating to the feasibility of certain modifications, but they are scattered throughout the docket and have not been probed. Plaintiff counsel's support for the proposed modifications are also insufficient. The plaintiff proposes far-reaching changes to the 1973 Consent Decree, including the authorization for various new bureaucracies and procedural mechanisms for its enforcement. Without record support, the plaintiff suggests that the court or the parties have made findings supporting the bulk of these changes, although no such findings have occurred. Furthermore, Metro Nashville vigorously contests whether these changes are feasible and necessary. Notably, both parties criticize each other for failing to present sufficient factual information to justify each side's proposed modifications (or to substantiate objections thereto).

In order to resolve whether and how to modify the decree (or whether factual circumstances now warrant reconsideration of the court's previous refusal to vacate the decree), the court will require a better developed – or at least centralized – record supporting each side's proposed modifications.[4]

Furthermore, the issue of standing (as to John Doe and the prospective Jane Roe) is now of paramount concern and could substantially affect the nature and types of modifications to the decree. Rather than rule on the motions without sufficient facts and on such shifting procedural

---

[4] The court recognizes that the parties' December 16, 2013 submissions were made in compliance with the court's November 1, 2013 Order. (Docket No. 165.) However, in the plaintiff's Reply, which was filed nearly four months after that Order, the plaintiff brought the Sixth Circuit standard concerning modification to the court's attention for the first time. (Docket No. 186 at p. 7.)

sands, the court will deny both motions without prejudice to refiling them at an appropriate stage.

In sum, Metro Nashville's Motion for Reconsideration (Docket No. 192) will be granted, the court's April 1, 2014 Order staying discovery (Docket No. 191) will be vacated, the parties' competing motions to modify (Docket Nos. 166 and 168) will be denied without prejudice, the court will defer ruling on the Motion to Add Named Plaintiff (Docket No. 189), and the court will permit discovery to proceed relative to both John Doe and Jane Roe, and, perhaps, with respect to the substitution of an appropriate representative party more generally.

The court will also order the parties to appear for a status conference to discuss a timetable for the appropriate progression of this case.[5]

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[5] Discovery of John Doe would seem to implicate current plaintiff's counsel as a witness. The parties should be prepared to address this issue with the court.