IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:73-cv-6971 |
| ) | Judge Aleta A. Trauger |
| BEVERLY BRILEY *et al.*, ) | |
| ) | |
|     Defendants. ) | |

**MEMORANDUM**

Before the court is the Renewed Motion to Vacate 1973 Consent Decree (Doc. No. 222) filed by the Metropolitan Government of Nashville and Davidson County ("Metro"). For the reasons set forth herein, the court will grant the motion and decertify the class. The court will also vacate that part of the Order issued January 14, 2011 (Doc. No. 122) that granted the plaintiff's Motion for Contempt (Doc. No. 88) and deny the Motion for Contempt.

**I.   PROCEDURAL BACKGROUND**

The procedural history of this case, previously described by the court as "both remarkable and tortured" (Doc. No. 201, at 2),[1] has been set forth at length in previous rulings. The court will nonetheless summarize the salient points here.

On September 19, 1973, a single-page Order (the "1973 Consent Decree") was entered by the Honorable L. Clure Morton of this court, stating, in relevant part, as follows:

> In recognition that fundamental constitutional rights of liberty and privacy are threatened by the use of arrest information by employers, the Metropolitan Government of Nashville and Davidson County Tennessee will henceforth refrain from inquiring about, obtaining, or using any information regarding any arrests

---

[1] *Doe v. Briley*, No. 3:73-6971, 2014 WL 4249983 (M.D. Tenn. Aug. 27, 2014).

which have not resulted in a criminal trial or conviction for criminal activities, when considering applicants for employment with the Metropolitan Government or the Metropolitan Board of Education at the present or in the future.

This Order is entered pursuant to stipulation of the parties evidenced by their attorneys' signatures below . . . .

(Doc. No. 19 Ex. A.)

The 1973 Consent Decree remained in place until July 17, 2006, when the plaintiff, through counsel, filed a Motion for Further Relief to Assure Compliance (Doc. No. 2). While that motion mentioned the 1973 Consent Decree, its primary focus was a March 22, 1974 Consent Decree (the "1974 Consent Decree"), entered into by the same parties in this case, which limited Metro's dissemination of arrest records (where no conviction had resulted) to law-enforcement personnel for law-enforcement purposes. (Doc. No. 2 Ex. A.) In September 2007, this court vacated the 1974 Consent Decree on the basis of significant changes in the law. (Doc. Nos. 61, 62.)[2] The Sixth Circuit affirmed. *Doe v. Briley*, 562 F.3d 777 (6th Cir. 2009).

Thereafter, the parties turned their attention to the 1973 Consent Decree. In January 2011, the court found Metro to be in contempt of the 1973 Consent Decree, as Metro had admittedly forgotten about its existence for the preceding 37 years. The plaintiff did not seek a remedy for the contempt at that time, maintaining instead that discovery was necessary to determine the scope and consequences of the contempt. The court also found that, although the plaintiff stated a constitutionally protected interest, there was "a huge disconnect between the scope of the 1973 Consent Decree and the right the plaintiff maintains it is designed to protect," and "changed circumstances over the intervening decades have made strict compliance with the 1973 Consent Decree legally and practically challenging." (Doc. No. 125, at 23.)[3] The court found at that time

---

[2] *Doe v. Briley*, 511 F. Supp. 2d 904 (M.D. Tenn. 2007).

[3] *Doe v. Briley*, No. 3:73-cv-6971, 2011 WL 129396 (M.D. Tenn. Jan. 14, 2011)

that Metro had not demonstrated that the 1973 Consent Decree should be vacated but that it was nonetheless "clear that the scope of the decree must be narrowed in light of changed societal circumstances." (*Id.* at 24.) The court therefore granted in part and denied in part Metro's Motion to Vacate, suspended the operation of the 1973 Consent Decree, and ordered the parties to negotiate in an attempt to agree to reasonable modifications of the Decree. The court held discovery concerning contempt in abeyance pending the results of the parties' negotiations. For the next two years, the court oversaw negotiations between the parties, which entailed numerous status conferences with, and written reports to, the court. (*See* Doc. Nos. 133–65.)

In November 2013, after progress in the negotiations had stalled, the court ordered the parties to submit competing motions to modify the 1973 Consent Decree (Doc. No. 165.) On the same date that the parties submitted their motions to modify and proposed modifications (Doc. Nos. 166–68), Metro filed a Motion for Discovery of Class Representative (Doc. No. 169), seeking discovery into whether there was an active class representative with standing to pursue a contempt action against Metro. The plaintiff opposed the motion (Doc. No. 179) and also filed a Motion to Quash (Doc. No. 178), arguing that John Doe's identity could not be disclosed and that the standing issue had already been adjudicated in 1973.

In February 2014, the court granted Metro's Motion for Discovery of Class Representative and denied the plaintiff's Motion to Quash. (Doc. No. 187.) In that Order, the court noted that it had worked "with counsel for the parties for over two years, through in-chambers conferences, to resolve the Motion for Contempt filed by the plaintiff and to arrive at a modified Consent Decree to replace the 1973 Consent Decree." (Doc. No. 187, at 1.) These efforts had proved unsuccessful, but, during these discussions, both the court and defense counsel had begun to suspect that plaintiff's counsel was "negotiating on the basis of his own

views and was not consulting with the class representative, John Doe." (*Id.*) The court held that "[t]he defendants and the court are entitled to know whether there is still a class representative and whether that person is adequately representing the class before this court in these ongoing proceedings." (*Id.*) A month later, the plaintiff moved to "add" a "Jane Roe" as plaintiff and class representative (Doc. No. 189) and to hold discovery of the class representative in abeyance pending the court's ruling on the Motion to Add Jane Roe as a class representative (Doc. No. 190).

In August 2014, the court issued a Memorandum and Order (Doc. Nos. 201, 202)[4] denying the motion to hold such discovery in abeyance in light of Metro's arguments regarding the importance of discovery to determine whether John Doe had been participating in the litigation up to that point, whether he had been an adequate class representative during the relevant time frame, and, if not, whether he—or his attorney—could recover attorney's fees as a "prevailing party." (Doc. No. 193.) In the Order permitting discovery into the role and identity of John Doe to proceed, the court noted that, if Metro's suspicions were confirmed and John Doe had not meaningfully participated in this lawsuit since the filing of the Motion for Further Relief in July 2006,

> it was unclear . . . what the impact would be on any motions previously filed and ruled upon in the renewed iteration of this lawsuit as it relates to the 1973 Consent Decree. For example, if no plaintiff approved it, must the Motion for Contempt be stricken and the court's associated 2011 order (which granted it) be vacated? Are ethics rules implicated?

(Doc. No. 201, at 14 n.3.)

In the same ruling, the court denied without prejudice the parties' dueling motions to modify the 1973 Consent Decree as insufficiently supported. The court held that, in the absence

---

[4] *Doe v. Briley*, No. 3:73-6971, 2014 WL 4249983 (M.D. Tenn. Aug 27, 2014).

of an agreement between the parties, it would be reversible error to modify the decree without a complete hearing and findings of fact. (Doc. No. 201, at 15.) Further proceedings in the case were delayed by the plaintiff's appeal of that decision, which the Sixth Circuit Court of Appeals dismissed for lack of subject matter jurisdiction in February 2015.

Shortly thereafter, the court ordered Metro's discovery on class representative issues to proceed. The same order stated that the "[p]laintiff class may defer its discovery regarding class representative issues until after a determination is made . . . regarding the motion of Jane Roe to serve as class representative." (Doc. No. 216.) The court anticipated then that, "[if] such discovery by the plaintiff class is to occur"—that is, if the plaintiff class's motion to add "Jane Roe" as a plaintiff and class representative (Doc. No. 189) were denied—an appropriate time line for that discovery process would be established by the court. (Doc. No. 216.)

The plaintiff thereafter filed the Motion of Jane Roe in Her Individual Capacity to Enforce Her Rights as a Member of the Certified Class (Doc. No. 217). After exhaustive briefing by both parties on that motion and on the plaintiff's earlier motion to add Jane Roe as a plaintiff and class representative (Doc. No. 189), the court denied the plaintiff's motions, finding, as a factual matter, that Jane Roe would not be an adequate class representative. (Doc. No. 231.)[5]

While briefing on those motions was ongoing, Metro filed the Renewed Motion to Vacate 1973 Consent Decree (Doc. No. 222), which remains pending. Counsel for the plaintiff class has filed a response in opposition. (Doc. No. 226.)

## II. STANDARD OF REVIEW

Rule 60(b)(5) states, in relevant part: "On motion and just terms, the court may relieve a party . . . from a final judgment, order or proceeding [because] . . . applying it prospectively is no

---

[5] *Doe v. Briley*, No. 3:73-CV-6971, 2016 WL 705762 (M.D. Tenn. Feb. 23, 2016).

longer equitable." Fed. R. Civ. P. 60(b)(5). This "[r]ule provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental." *Horne v. Flores*, 557 U.S. 433, 447 (2009). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief." *Id.* (citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992)). "Once a party carries this burden, a court abuses its discretion 'when it refuses to modify an injunction or consent decree in light of such changes.'" *Id.* (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)); *see also Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 613 (6th Cir. 2011).

### III. ANALYSIS

Metro posits three bases for vacating the 1973 Consent Decree: (1) the 1973 Consent Decree does not protect a cognizable constitutional interest; (2) the Decree "has achieved its purpose" (Doc. No. 223, at 12) because Metro and MNPS "are carrying out the purposes of the 1973 Decree already by not using arrests as automatic disqualifiers for employment" (Doc. No. 223, at 4); and (3) there has been no class representative since the filing of the Motion for Further Relief to Assure Compliance (Doc. No. 2) in July 2006, and it is not clear that any member of the class certified in 1973 still exists, as a result of which there is no one with standing to enforce the terms of the decree.

Regarding the first argument, the court already determined, in addressing Metro's first Motion to Vacate, that the Consent Decree continues to protect (nay, over-protect) a cognizable constitutional interest. (Doc. No. 125, at 22–23.) The court declines to revisit that decision. As for the second argument, the court already determined, in denying both parties' motions to modify the 1973 Consent Decree, that the court could not effect such contested modification

longer equitable." Fed. R. Civ. P. 60(b)(5). This "[r]ule provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental." *Horne v. Flores*, 557 U.S. 433, 447 (2009). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief." *Id.* (citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992)). "Once a party carries this burden, a court abuses its discretion 'when it refuses to modify an injunction or consent decree in light of such changes.'" *Id.* (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)); *see also Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 613 (6th Cir. 2011).

### III. ANALYSIS

Metro posits three bases for vacating the 1973 Consent Decree: (1) the 1973 Consent Decree does not protect a cognizable constitutional interest; (2) the Decree "has achieved its purpose" (Doc. No. 223, at 12) because Metro and MNPS "are carrying out the purposes of the 1973 Decree already by not using arrests as automatic disqualifiers for employment" (Doc. No. 223, at 4); and (3) there has been no class representative since the filing of the Motion for Further Relief to Assure Compliance (Doc. No. 2) in July 2006, and it is not clear that any member of the class certified in 1973 still exists, as a result of which there is no one with standing to enforce the terms of the decree.

Regarding the first argument, the court already determined, in addressing Metro's first Motion to Vacate, that the Consent Decree continues to protect (nay, over-protect) a cognizable constitutional interest. (Doc. No. 125, at 22–23.) The court declines to revisit that decision. As for the second argument, the court already determined, in denying both parties' motions to modify the 1973 Consent Decree, that the court could not effect such contested modification

longer equitable." Fed. R. Civ. P. 60(b)(5). This "[r]ule provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental." *Horne v. Flores*, 557 U.S. 433, 447 (2009). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief." *Id.* (citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992)). "Once a party carries this burden, a court abuses its discretion 'when it refuses to modify an injunction or consent decree in light of such changes.'" *Id.* (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)); *see also Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 613 (6th Cir. 2011).

### III. ANALYSIS

Metro posits three bases for vacating the 1973 Consent Decree: (1) the 1973 Consent Decree does not protect a cognizable constitutional interest; (2) the Decree "has achieved its purpose" (Doc. No. 223, at 12) because Metro and MNPS "are carrying out the purposes of the 1973 Decree already by not using arrests as automatic disqualifiers for employment" (Doc. No. 223, at 4); and (3) there has been no class representative since the filing of the Motion for Further Relief to Assure Compliance (Doc. No. 2) in July 2006, and it is not clear that any member of the class certified in 1973 still exists, as a result of which there is no one with standing to enforce the terms of the decree.

Regarding the first argument, the court already determined, in addressing Metro's first Motion to Vacate, that the Consent Decree continues to protect (nay, over-protect) a cognizable constitutional interest. (Doc. No. 125, at 22–23.) The court declines to revisit that decision. As for the second argument, the court already determined, in denying both parties' motions to modify the 1973 Consent Decree, that the court could not effect such contested modification

without an evidentiary hearing. (Doc. No. 201, at 15.) The court likewise cannot find as a factual matter, on the basis of the limited record now before the court, that the Decree has achieved its purpose or that Metro and MNPS are already voluntarily carrying out its purposes.

As for Metro's argument regarding the absence of a class representative, plaintiff's counsel responds by insisting only that Metro's assertion that there is no class representative is "puzzling, since the basis for the Court's discovery order was that, if there is an absence of a class representative, then plaintiff class will have an opportunity to seek discovery from Metro with the objective of identifying an appropriate plaintiff." (Doc. No. 226, at 5.) Plaintiff's counsel does not dispute the fact that John Doe, the original class representative, has not been involved in this action since its "re-awakening" in 2006. Counsel, in fact, does not remotely address, even by allusion, the larger point made by Metro's motion: that counsel for the plaintiff's class apparently unilaterally filed the Motion for Further Relief to Assure Compliance (Doc. No. 2) in July 2006 and has litigated this action from that time forward (over ten years) without a class representative or any contact with any class member. (*See* Doc. No. 223-1 (June 10, 2015 Letter from Class Counsel J. Blumstein to Metro Counsel K. Oliver, stating: "John Doe is unavailable to respond to Metro's discovery request because his whereabouts are unknown to class counsel . . . . John Doe has not been involved in the enforcement proceedings that have been initiated – in 2006 or subsequently.").) Further, it appears that, without Metro's having sought to take discovery related to the identity of John Doe in late 2013 (Doc. No. 169)—which counsel for the plaintiff class opposed (Doc. No. 179) and, in fact, sought to quash (Doc. No. 178)—class counsel would have continued to litigate this action on his own without a class representative. Without, in effect, a client.

To be sure, the claims of a properly certified class have "a legal status separate from and

independent of the interest asserted by the named plaintiff." *Whitlock v. Johnson*, 153 F.3d 380, 384 (7th Cir. 1998) (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980)); *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 753 (1976); *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)). And it is the duty of plaintiff class counsel "to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Generally, if a named plaintiff becomes an inadequate class representative, the appropriate remedy is to provide for addition or substitution of an appropriate class representative, so as to preserve the separate and distinct interests of the unnamed members of the class, who continue to have important class-based interests to protect. 5 *Moore's Federal Practice* § 23.87 (2013) ("Instead of immediately decertifying a class [upon discovering that "the class representative is inadequate"], the court should afford other class members the opportunity to seek to intervene and become a substitute class representative."). *See also Hadix v. Johnson*, 182 F.3d 400, 406 n.3 (6th Cir. 1999) (noting that, where a class representative is no longer deemed adequate, the "appropriate solution would be for the district court to allow for the substitution of class representatives with live claims"); *Birmingham Steel Co. v. TVA*, 353 F.3d 1331, 1333 (11th Cir. 2003) (holding that the district court abused its discretion in decertifying a class "without permitting class counsel reasonable time to determine whether a new class representative could be substituted").

At the same time, the court is not required to permit substitution of the class representative in every instance. In *Culver v. City of Milwaukee*, 277 F.3d 908 (7th Cir. 2002), for instance, the Seventh Circuit affirmed the district court's decertification of a class where it was determined that the class representative's claims were moot, he was not an appropriate class representative, and there was no other class member willing to replace him. The court stated:

> Although the mootness of a named plaintiff's claim does not automatically disqualify him from serving as a class representative, since it does not make the

> suit moot (the unnamed class members' claims are not moot), it makes him presumptively inadequate, in our view . . . . Given the mootness of [the named plaintiff's claims] and his consequent lack of any material stake in prosecuting this litigation—given as well the lack of energy with which he had discharged his duties as class representative—the lawyer for the class should have lined up another class member to take [his] place as class representative in the event that we ordered the class recertified. She has not done this. So far as we can tell, no member of the class has any interest beyond that of a curious onlooker in pursuing this litigation. That is a compelling reason for decertification unless the requirement that a class action, like any other suit, have a plaintiff is to be dropped and the class lawyer recognized as the true plaintiff, a step that however "logical" the courts and Congress have balked at taking.

*Id.* at 912–13. In other words, mootness of the class representative's claims, combined with the lack of any other class member willing and able to step up as class representative, may justify decertification.

In addition, unethical conduct on the part of class counsel, standing alone, may compel decertification. Regarding the relationship between class counsel and the class he or she represents, the *Culver* court was realistic about the fact that it is typically "counsel for the class representative," rather than the named parties, "who direct and manage" class actions. *Id.* at 913 (citations omitted). Thus, that court expressly acknowledged that its references to the "class representative's" lack of energy and lackadaisical efforts to move the case forward were actually comments about the representative's attorney: "All [the representative's] moves in this suit were almost certainly the lawyer's." *Id.* In light of that observation, the court concluded that, if a lawyer, "through breach of his fiduciary obligations to the class, or otherwise, demonstrates that he is not an adequate representative of the interests of the class as a whole, realism requires that certification be denied" or, rather, in that case, that decertification be granted. *Id.* On that basis, too, the court held that the district court had not erred in decertifying the class, which had the effect of "demoting" the case to an individual action, and then dismissing the individual action

on the basis that the named plaintiff's claims had become moot. *Id.*[6] *Accord Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498–99 (7th Cir. 2013) (noting that "'serious' or 'major' ethical violations—[even if] not prejudicial to the class—can require denial of class certification").

Aside from concerns about the conduct of class counsel, Article III of the Constitution limits federal judicial power to "cases" and "controversies." This limitation serves both to restrict "the business of federal courts to 'questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process,' and [to] define[] the 'role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395–96 (1980) (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). A controversy is rendered moot if "the issues presented are no longer 'live'" or if "the parties lack a legally cognizable interest in the outcome." *Id.* at 396 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). In *Geraghty*, the Supreme Court held that a class action does not necessarily become moot when the named plaintiff's substantive claims are mooted by something other than judgment on the merits. The Court determined that the appeal before it still presented a "live" controversy, as demonstrated by the fact that other unnamed class members had moved to be substituted, or to intervene, as "named" respondents in the appeal. *Id.* at 396.

In this case, the claims of the plaintiff representative, John Doe, have not merely been rendered moot. John Doe is an inadequate representative because his whereabouts are unknown, and class counsel has no way to contact him. As a result, there is currently and has been, for the

---

[6] The court further concluded, however, that the district court had erred in failing to ensure that whatever remaining members of the putative class were notified of the decertification and dismissal and therefore remanded for compliance with Fed. R. Civ. P. 23(e). *Id.* at 913–14.

preceding decade, no actual class representative. Counsel has apparently known since 2006 that he was unable to locate or get in touch with John Doe. Under the circumstances, counsel had an obligation to notify the court, upon filing the Motion for Further Relief, of the need to locate a substitute representative and to request leave at that time, if necessary, to conduct discovery to assist him in locating an appropriate representative. Instead, he purported to act on behalf of the class and engaged in lengthy negotiations for the modification of the 1973 Consent Decree, but without consulting or communicating with an actual class representative or even a class member. This conduct violates ethics rules. *See, e.g.*, Tenn. R. Prof. Conduct 1.2(a) ("[A] lawyer shall abide by *a client's decisions* concerning the objectives of representation and . . . shall consult with the client about the means by which the client's objectives are to be accomplished." (emphasis added)); Tenn. R. Prof. Conduct 1.4 ("A lawyer shall . . . promptly inform *the client* of any decision or circumstance with respect to which the client's informed consent . . . is required by these Rules; [and] keep the client reasonably informed about the status of the matter. . . ." (emphasis added)).

And, in a decade of litigation, the only potential replacement representative to have come forward, "Jane Roe," was not an appropriate class representative because her interests were plainly different from those of the class, and the wording of the 1973 Consent Decree did not even apply to her. (Doc. No. 231, at 4–6.) Counsel has claimed that he needs discovery to locate other class members and a substitute class representative. Although the court previously indicated a willingness to allow him to conduct such discovery, the court now concludes that counsel's behavior in filing the Motion for Further Relief in 2006 without an active class representative, and then, nearly ten years later, seeking discovery to find one, is equivalent to filing a complaint and then seeking discovery to locate a plaintiff to make the claims. Counsel is

not entitled to conduct a fishing expedition to support the continuing need for relief in this case.

Courts recognize that it is often true that a class representative has a "merely nominal stake" in the outcome of a class action, in which situation "the real plaintiff in interest is then the lawyer for the class, who may have interests that diverge from those of the class members." *Culver*, 277 F.3d at 910. Rule 23 tries to minimize the potential abuses of the class action device posed by the fact that attorneys are often the "real plaintiff in interest" "in two principal ways, first by insisting that the class be reasonably homogeneous, and second by insisting that the class representative be shown to be an adequate representative of the class." *Id.* at 910–11 (citing Fed. R. Civ. P. 23(a)(2) & (a)(3); *Sosna v. Iowa*, 419 U.S. 393, 403 n.13 (1975); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 & n.20 (1997)). *Accord Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524–25 (6th Cir. 1976) ("There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.") Here, there is no class representative and apparently no class member willing and ready to replace the absent class representative. As the *Culver* court stated: "That is a compelling reason for decertification unless the requirement that a class action, like any other suit, have a plaintiff is to be dropped and the class lawyer recognized as the true plaintiff, a step that however 'logical' the courts and Congress have balked at taking." *Culver*, 277 F.3d at 913. Counsel here has tried to avoid that conclusion by simply failing to notify the court or the defendant that he was operating without a plaintiff.

Finally, given the absence of a class representative or any class member willing and able to step into his shoes, it is apparent that there is no longer a live controversy and perhaps no further need for the 1973 Consent Decree. In *Geraghty*, the named plaintiff's substantive claims

had been mooted, but other unnamed class members had moved to intervene. On that basis, the Supreme Court determined that the case still presented a "live" controversy. Here, in ten years, no such representative has come forward.

In short, there is neither a class representative nor another class member willing to step into that position. Class counsel failed to reveal that fact to the court or the opposing party in a timely fashion, and there is no longer a live controversy. The court is therefore compelled to decertify the class and to dismiss plaintiff John Doe's claims—to the extent he has any—for failure to prosecute over the course of the decades that this case remained dormant. Because counsel has litigated this action without a client, the court will also vacate the previous finding of contempt. Further, the court will grant the motion to vacate the 1973 Consent Decree on the basis that significant changes in factual conditions render applying it prospectively "no longer equitable." Fed. R. Civ. P. 60(b)(5); *Horne v. Flores*, 557 U.S. 433, 447 (2009).

The court will delay entry of final judgment, however, and will direct the parties to brief the issue of whether the court or the parties must in some way attempt to notify the class members of the decertification of the class and dismissal of this action.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge